# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

Jimmy Agbayani                                           Civil Action No. 05-0881

versus                                                       Judge Tucker L. Melançon

Cal Dive International, Inc.                             Magistrate Judge Methvin

## MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment filed by defendant Cal Dive International, Inc. (Cal Dive) [Rec. Doc. 12]. Plaintiff Jimmy Agbayani (Agbayani) has filed a Memorandum in Opposition [Rec. Doc. 14]. Defendant Cal Dive has filed a Rebuttal Memorandum in Support of Motion [Rec. Doc. 17]. For the following reasons, the motion will be granted in part and denied in part.

### *I. Background*

Plaintiff filed this action pursuant to the Jones Act and General Maritime Law, asserting claims of negligence, unseaworthiness and maintenance and cure against Cal Dive [Complaint, Rec. Doc. 1, paras. 1, 8, 11]. Plaintiff alleges that he was employed by Cal Dive and assigned to work on the vessel M/V MAN-O-WAR which Cal Dive owned, operated, managed, and controlled [Id. at paras. 4-6]. Plaintiff alleges that he suffered permanent injuries while in the course and scope of his employment, and pursuant to orders, on July 26, 2002 [Id. at para. 7].

Plaintiff's injuries allegedly occurred when he was performing clean up work of a dismantled offshore oil and gas platform [Plaintiff Deposition at pps. 93-94].[1] Plaintiff described the clean-up work as "sweeping" which included searching for and removing debris that had fallen to the floor of the Gulf of Mexico [Id. at pps. 94-95]. Plaintiff had done this type of work before and believed he was qualified to perform it [Id. at p. 95]. Visibility was poor and there was no video camera on plaintiff's hat to relay a picture of what he was doing to the rack operator[2] and dive supervisor [Id. at p. 95]. Plaintiff stumbled upon a partially buried object, poking out through the mudline and told the rack operator [Id. at p. 89]. Plaintiff described his

---

[1] Plaintiff states in his memorandum that, due to the manner in which he was extracted, he experienced decompression sickness on the day of the incident and was sent to a hyperbaric chamber [Plaintiff's Memorandum, Rec. Doc. 14 at p. 4]. When he came out of the chamber, plaintiff states that he complained about the pain in his shoulder to his dive supervisor who told him he might have pulled a muscle. [Id.]. Although plaintiff's complaint alleges that the incident in which he was allegedly injured occurred on July 26, 2006, his deposition testimony was that the alleged injury occurred on July 24, 2002 during Dive 51 [Plaintiff Deposition, pp. 130-133]. Defendant asserts that the bends incident occurred during a dive subsequent to Dive 51, on or about July 25 or 26, and is unrelated to the alleged injury. Plaintiff does not point to evidence surrounding the "bends" incident to raise a genuine issue of fact, rather he argues that Cal Dive was negligent in its instructions to hurry up and lift an object that could not be safely lifted [Plaintiff's Memorandum, Rec. Doc. 14 at p. 8]. As such, the Court does not address whether or not the "bends" incident was related to alleged injury.

[2] The rack operator communicates by radio with the diver in the water [Plaintiff Deposition at p. 118]. Defendant states that the rack operator is a diver located in the "dive shack" who completes various entries on the dive sheet and communicates with the diver in the water. [Defendant's Memorandum, Rec. Doc. 12 at 4-5, see also Plaintiff Deposition at p. 118]. The rack operator rotates to standby diver who remains within the vicinity of the dive shack in case of emergency and will rescue the diver [Defendant's Memorandum, Rec. Doc. 12 at p. 5]. On the next dive the standby diver rotates to diver [Id.].

communication with the rack operator in regard to the operation in which he allegedly was injured as follows:

> A. Well, what he – I told the rack operator what I found there and the first thing he said, "Well, try to come up on it". So I did that, I came up on it.
>
> Q. Okay.
>
> A. And I said, "It is not budging".
>
> Q. Okay.
>
> A. "Well, do some gouging on the bottom to get all the mud out and get a better grip to it", and he said, "come up on it". And I did that again and it is not budging. So then he said, "Go ahead and clear some more mud, then at least you can put the sling under there. While you are doing it try to come up on it and push this sling, you know, where you got a better grip, a better position where it is not going to slip off the frame".
>
> Q. Okay.
>
> A. And my time was running out and he is telling you, "Hurry up. You have got to keep – try to get this thing hooked up so the crane operator can pick this thing up", so he doesn't have to waste another dive to do this dive.

[Plaintiff Deposition at pps. 102-3]. When extracted the object was found to be a part of a helicopter pad skirt constructed of iron pipe and weighing 150 - 200 pounds [Id. pps. 89-91, 99]. Plaintiff testified that the rack operator mentioned three or four

3

times that he "come up on it" [Id. at p. 100]. Plaintiff testified that "I just follow what they told me to do and they told me to come up on it, on this piece of object that was lodged in the mud, and I did that and that is how I got hurt." [Id. at pps. 112-113].

## II. *Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.*

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the Court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49

(1986); *Little*, 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the Court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the Court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. Analysis

#### A. Jones Act Negligence

Defendant seeks dismissal of plaintiff's Jones Act claims, arguing that (1) no reasonable trier of fact can conclude that Cal Dive was negligent and (2) there is no evidence of a dangerous condition or that Cal Dive knew or should have known of a dangerous condition [Defendant's Memorandum, Rec. Doc. 12 at p. 15]. Defendant contends that plaintiff was assigned the ordinary task of searching for debris on the floor of the Gulf of Mexico and that plaintiff has admitted that he is qualified for the task [Id.]. Defendant continues that only plaintiff could see the imbedded frame (as he had no video camera), and that, accepting plaintiff's testimony as true, when a fellow diver asked plaintiff to "come up on it," plaintiff did so without objection because this was a normal practice. [Defendant's Memorandum, Rec. Doc. 12 at p. 5, 15]. Defendant states that, when the frame did not budge, plaintiff's fellow diver asked him remove mud from underneath the imbedded frame to "ease up the suction"

5

possibly caused by the mud so that plaintiff could then "move it" in order to place a sling around the frame and shackle it to the crane line [Defendant's Memorandum, Rec. Doc. 12 at 15, referencing Plaintiff Deposition at pps. 98 and 105-106]. Defendant references plaintiff's testimony that it was normal to clean more mud underneath an object to place a sling on it and to shackle the sling to the crane line: "Move it. You will be able to shake it or move it if it's small enough where you can, you know, play with it, move it around and then be able to shackle it and whatnot." [Plaintiff Deposition at pps. 105-107]. As to plaintiff's testimony that he was instructed to "hurry up," defendant contends that this instruction is immaterial because plaintiff was not injured while attempting to attach the sling to the crane line [Defendant's Memorandum, Rec. Doc. 12 at 15]. Defendant relies on plaintiff's testimony that it is "normal procedure pretty much. . . they hurry you up so that don't have to burn another diver just for that dive" to show that the "hurry up order" was given at the end of the dive and in order to attach the sling to the crane line and shackle it together [Defendant's Memorandum, Rec. Doc. 12 at pps. 7-8, 15, Defendant's Reply Memorandum, Rec. Doc. 17 at 5-6; Plaintiff Deposition at pps. 105-107].

Defendant also argues that plaintiff has failed to dispute that the vessel had the proper number of dive crew, that no equipment broke or malfunctioned to cause his

injury, that he was qualified to perform the work and that "no one from Cal Dive instructed him to over exert himself, to jerk on the object in an unsafe manner or to use unsafe techniques during this project" [Defendant's Reply Memorandum, Rec. Doc. 17 at 3]. Defendant further argues that plaintiff never objected to this routine procedure, never suggested an alternative method and never advised of an unsafe or dangerous condition." [Defendant's Memorandum, Rec. Doc. 12 at pps. 7-8]. Defendant urges the Court that no reasonable jury could conclude that a "fellow diver's request for plaintiff to 'come up on it' constitutes negligent behavior" [Defendant's Memorandum, Rec. Doc. 12 at pps. at 15-16, Defendant's Reply Memorandum, Rec. Doc. 17 at p. 5]. Additionally, defendant argues that only plaintiff could see and feel the imbedded frame and that plaintiff failed to advise of an unreasonably dangerous condition, because no evidence of such an unreasonably dangerous condition existed [Defendant's Memorandum, Rec. Doc. 12 at p. 16]. Even assuming a dangerous condition, defendant contends that there is no evidence that Cal Dive knew or should have known of that condition in order to impose liability on Cal Dive [Id.].[3]

---

[3] Defendant also states that it had no knowledge of plaintiff's injury "until long after he filed suit" [Defendant's Memorandum, Rec. Doc. 12 at p. 2]. Defendant states that plaintiff never reported a continuing shoulder injury, worked until approximately December 2, 2003 without complaint or incident, could not recall whether or not he discussed the alleged injury with Ms. Renee Broussard with Cal Dive, and the alleged accident did not affect plaintiff [Defendant's Memorandum, Rec. Doc. 12 at pps. 10-12].

Plaintiff relies on Coast Guard[4] and OSHA[5] regulations requiring the presence of an individual in charge of planning for the diving operation, arguing that Defendant ignored this requirement and disavows responsibility for knowing and planning for the conditions that plaintiff encountered [Plaintiff's Memorandum, Rec. Doc. 14 at p. 6]. Under the Jones Act, as regulatory violation may result in a finding of negligence per se. *Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 161-162 (5th Cir.1985). However, defendant responds that a dive supervisor was on duty and submits the affidavit of Brad Simmons, diver and the radio operator on Dive No. 51, that Larry Bouis was the dive supervisor on duty for the dive, concluding that plaintiff's reliance on these regulations is immaterial [Defendant's Reply Memorandum, Rec. Doc. 17 at p. 4, Exhibit B]. Plaintiff has not contradicted this evidence, and therefore, has not raised a genuine issue of fact that Cal Dive was negligent *per se.*

Plaintiff also contends that defendant incorrectly suggests that plaintiff was simply responding without protest to suggestions from a "fellow diver," since the "rack operator" was given access to plaintiff's sole means of communication with the

---

[4] 46 C.F.R. 197.404(b).

[5] 29 C.F.R. 1910.410(3)(c).

vessel and was placed in a position to direct plaintiff's activities [Plaintiff's Memorandum, Rec. Doc. 14 at p. 6]. Plaintiff states that when he reported that he had encountered an unusual object that he could not budge, he was instructed to repeatedly attempt to lift it and to "hurry up" [Id.]. Plaintiff argues that defendant cannot dissociate itself from those instructions by characterizing them as a suggestion from a "fellow diver" that plaintiff was free to disregard [Id. at pps. 6-7]. Plaintiff argues that defendant's attempt to place sole responsibility on him to assess the safety of the task is at odds with the legal principles underlying the concept that a seaman must exercise reasonable care for his safety [Id. at p. 7]. Plaintiff submits that reasonable jurors could conclude that Cal Dive was negligent in these instructions to hurry up and repeatedly attempt to lift the heavy object at issue that could not be safely lifted [Id. at p. 8]. Plaintiff further submits that, if the jury finds that such negligence contributed even in the slightest to his injury, then he is entitled to recover [Id.].[6]

Under the Jones Act, a seaman has a cause of action against his employer for negligence. *Becker v. Tidewater*, 335 F.3d 376, 386 (5th Cir.2003). A seaman is

---

[6]Defendant states in rebuttal that plaintiff "implies" that Cal Dive is negligent for not providing video camera on the job [Defendant's Memorandum, Rec. Doc. 17 at 7]. Plaintiff has neither argued nor relied on evidence to support any theory that Cal Dive was negligent in failing to provide a video camera; thus, whether or not Cal Dive had a duty to provide a video is not at issue.

entitled under the Jones Act to recovery if his employer's negligence is the cause, in whole or in part, of his injury. *Gautreaux v. Scurlock Marine*, 107 F.3d 331, 335 (5th Cir.1997) (en banc). A fundamental duty of a Jones Act employer is to provide his seaman employees with a reasonably safe place to work. *See Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir.1989). A Jones Act employer is liable for the negligence of any of its employees. *See Ivy v. Security Barge Lines, Inc.,* 606 F.2d 524 at 525 (5th Cir. 1979).

The standard of care required of both employers and seamen is "ordinary prudence under the circumstances." *Gautreaux*, 107 F.3d at 338. The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education. *Gautreaux*, 107 F.3d at 339. The reasonable person standard, therefore, and a Jones Act negligence action becomes one of the reasonable seaman in like circumstances. *Id.* "This standard is designed to be very light; because seamen are considered wards of admiralty and the court, the Jones Act is interpreted broadly for their protection." *Harrison v. Seariver Maritime*, 2003 WL 342266 at p. 4 (5th Cir. 2003). "On the other hand, a Jones Act employer is not an insurer of a seaman's safety; the mere occurrence of injury does not establish liability." *Id.* The employer is not liable when an injury arises solely from the ordinary and normal activities or risk of seaman's

work in the absence of proof that the complained of injury was caused by employer negligence. *Id.* An employer simply is not required to protect (indeed, cannot protect) employees from all types of injuries. *Id* at 5. However, once it has been shown that the employer breached its duty to the injured worker, causation is generally an easy burden for plaintiff to carry. *Brister v. A.W.I., Inc.,* 946 F.2d 350, 355 (5th Cir. 1991). In order to find that the employer failed to provide a reasonably safe place to work, a plaintiff must produce "evidence from which a jury can infer that the unsafe condition existed and that the owner knew of, or in the exercise of due care, should have known of it." *Perry v. Morgan Guaranty Trust Co.,* 528 F.2d 1378, 1379 (5th Cir. 1976).

In this case, plaintiff alleges that Cal Dive, his employer, negligently caused his injuries and breached its obligation to provide him with a safe place to work. In view of the foregoing discussion, and considering the record as a whole, the Court finds that plaintiff has produced evidence sufficient to raise a genuine issue of fact for trial as to whether Cal Dive's actions amounted to negligence. Specifically, the Court finds that a reasonable juror could determine that the repeated instruction from the diver-radio operator, through whom plaintiff maintained his communications with the vessel, to "come up on it" or to lift a heavy object which plaintiff had radioed that he could not "budge", amounted to negligence. Accordingly, the Court

will deny defendant's motion for partial summary judgment as to plaintiff's Jones Act claims.

*Unseaworthiness*

In addition to alleging that his injuries were caused by Cal Dive's negligence and a breach of its obligation to provide him with a safe place to work, plaintiff also alleges that his injuries were due to the unseaworthiness of the M/V MAN-O-WAR [Complaint, Rec. Doc. 1 at par. 8]. Cal Dive moves for summary judgment of this claim on two bases: (1) the duty to provide a seaworthy vessel is owed only by the owner or operator of the vessel, and Cal Dive did not own or operate the vessel; and, (2) there is no evidence to show that the MAN-O-WAR was unreasonably fit for its intended purpose [Defendant's memorandum, Rec. Doc. 12 at 13-14]. Cal Dive submits the affidavit of Steve Brazda, Senior Vice-President for Cal Dive, that Cal Dive did not own or operate the MAN-O-WAR [Id. at Exhibit C].

Plaintiff argues that defendant's suggestion that it is immune from liability for unseaworthy conditions upon the vessel upon which he is assigned to work is insupportable and that "it is inconceivable that a Jones Act employer could be deemed to have satisfied its non-delegable duty to provide a safe place to work by assigning a seaman to work aboard an unseaworthy vessel [Plaintiff's Memorandum, Rec. Doc. 14 at 8]. Plaintiff states that "[w]hile it is true that only the vessel and its owner may

be held absolutely liable for unseaworthy conditions aboard a vessel, it is incorrect to suggest that the presence of unseaworthy conditions will not give rise to Jones Act liability on the part of an employee like Cal Dive" [Plaintiff's memorandum, Rec. Doc. 14 at 8-9].

As plaintiff has conceded, to be held liable for breach of the duty, the defendant "must be in the relationship of an owner or operator of a vessel." *Baker v. Raymond Intern., Inc.,* 656 F.2d 173 at 181 (5th Cir. 1981), *citing Daniels v. Florida Power & Light Co.*, 317 F.2d 41, 43 (5th Cir.), cert. denied, 375 U.S. 832, 84 S.Ct. 78, 11 L.Ed.2d 63 (1963). Although the cases upon which plaintiff relies, *Ceja v. Mike Hooks, Inc.,* 690 F.2d 1191, 1193 (5th Cir. 1982); *Smith v. Ithaca Corp.,* 612 F.2d 215 (5th Cir. 1980); *Constance v. Johnston Drilling Co.,* 422 F.2d 369 (5th Cir. 1970), may support his conclusion that an unseaworthy condition may give rise to Jones Act liability for failure to provide a safe place, under the facts of this case, plaintiff's argument is of no moment. Plaintiff's argument is general and fails to specify the unseaworthy condition that allegedly caused his injuries. Presumably, he is complaining of the sweeping operation. If so, he has presented his Jones Act claims based on the argument that the operation was unsafe. As plaintiff has rightly conceded under the applicable Fifth Circuit jurisprudence that only a vessel owner may be held strictly liable for a vessel's unseaworthy conditions, the Court finds Cal

Dive's motion to have merit and will dismiss plaintiff's claims against it for the alleged vessel unseaworthiness.

*Conclusion*

For the reasons stated above, Cal Dive's motion for partial summary judgment will be granted in part and denied in part. The Court will deny Cal Dive's motion for summary dismissal of plaintiff's claims pursuant to the Jones Act. The Court will grant Cal Dive's motion for summary judgment as to plaintiff's claims under the general maritime law for unseaworthiness, and these claims will be dismissed with prejudice.